UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ERNEST S. MIRON, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 25-cv-11414-ADB |
| | * | |
| FRANK BISIGNANO, | * | |
| Commissioner of Social Security, | * | |
| | * | |
| Defendant. | * | |

## **MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiff Ernest S. Miron ("Miron") brings this action pursuant to section 1631(c)(3) of the Social Security Act, 42 U.S.C. § 1383(c)(3), challenging the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for Supplemental Security Income ("SSI") benefits. Currently pending is the Commissioner's motion for an order affirming his decision. [ECF No. 20]. For the reasons described herein, the Court finds that the Administrative Law Judge's decision was supported by substantial evidence and therefore **GRANTS** the Commissioner's motion to affirm.

I.      **BACKGROUND**

A.      **Statutory and Regulatory Framework: Five-Step Process to Evaluate Disability Claims**

"The Social Security Administration is the federal agency charged with administering both the Social Security disability benefits program, which provides disability insurance for covered workers, and the Supplemental Security Income program, which provides assistance for the indigent aged and disabled." Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 42 U.S.C. §§ 423, 1381a).

The Social Security Act (the "Act") provides that

> an individual shall be considered to be disabled . . . if he [or she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 1382c(a)(3)(A); see also id. § 423(d)(1)(A). The disability must be severe, such that the claimant is unable to do his or her previous work or any other substantial gainful activity that exists in the national economy. See 42 U.S.C. § 1382c(a)(3)(B); id. § 423(d)(2)(A); 20 C.F.R. § 416.905 (2026).

When evaluating a disability claim under the Act, the Commissioner uses a five-step process, which the First Circuit has explained as follows:

> All five steps are not applied to every applicant, as the determination may be concluded at any step along the process. The steps are: 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the applicant's "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the applicant, given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey, 276 F.3d at 5 (citing 20 C.F.R. § 416.920 (2001)).

**B.      Procedural Background**

Miron filed his application for SSI benefits on August 27, 2021.  [R. 17, 40, 241–50].[1]
He alleged that he was disabled due to post-traumatic stress disorder ("PTSD"), bipolar disorder,
anxiety, depression, panic attacks, and high blood pressure.  [R. 265, 269].  He initially alleged
that he was disabled beginning on January 23, 1971, [R. 265], but later amended his alleged
onset date to August 27, 2021, [R. 40].[2]

The Social Security Administration (the "SSA") denied Miron's application for SSI
benefits on March 25, 2022, and again upon reconsideration on November 16, 2022.  [R. 105–
08, 116–18].  Thereafter, Miron requested an administrative hearing, see [R. 144], and two
telephonic hearings took place before Administrative Law Judge ("ALJ") Anthony Dziepak, on
April 24, 2023, and February 26, 2024.  [R. 37–50, 52–88].  Miron, who was represented by
counsel, appeared and testified at the February 26, 2024, hearing.  [R. 54].  On May 20, 2024, the
ALJ issued a decision finding that Miron was not disabled.  [R. 17–30].  The SSA Appeals
Council denied Miron's Request for Review on March 25, 2025.  [R. 1–5].  On May 19, 2025,
Miron filed a timely complaint with this Court, seeking review of the Commissioner's decision
pursuant to section 205(g) of the Act.  [ECF No. 1].

**C.      Factual Background**

Miron was born on January 23, 1971, and was fifty years old at the time of his August 27,
2021, application date.  [R. 28, 265].  He has a sixth-grade education.  [R. 28, 270].  Miron

---

[1] References to pages in the Administrative Record, which were filed electronically at ECF No.
7, are cited as "[R. __ ]."
[2] Under 20 C.F.R. § 416.335 (2026), the earliest month for which a claimant may receive SSI
benefits is the month following the month they file the application.

worked several different jobs between 1996 and 2003, including as a lube technician and automotive detailer, but stopped working in 2003.  [R. 269–70].  Since the filing of his application, he has occasionally worked as a handyman and landscaper.  [R. 73–74, 598, 912].

**D.      Relevant Medical Evidence**

Miron has a history of outpatient mental health treatment going back at least to 2018.  [R. 23, 350, 601–02].  In April 2022, during a telemedicine visit with Catherine Smail, Psy.D., Miron reported feeling depressed and anxious since childhood; he also reported that he was experiencing irritability and fatigue and that he felt uncomfortable in crowds.  [R. 23–24, 617–18].[3]  April 2022 mental status examinations revealed rapid speech and neutral/euthymic mood, appropriate but grandiose demeanor, and appropriate or fair judgment, but otherwise appropriate and unremarkable mental status functions.  [R. 24, 614, 617].  A June 2022 mental status evaluation revealed anxious mood, thought content with depressive cognitions, and unremarkable and distractable thought process, but otherwise appropriate and unremarkable mental status functions.  [R. 608].

During a September 2022 intake visit with Abdulateef Aljarboua, Miron's therapist, Miron reported symptoms including mood swings, re-experiencing trauma, avoidance, and difficulty sleeping.  [R. 24, 604].  A mental status examination revealed avoidant eye contact, anxious reported mood, slurred speech, racing thought process and poor judgment, but appropriate and cooperative demeanor, alert attention, and unremarkable motor activity, thought content, and perception.  [R. 24, 601].  Further examinations by Aljarboua between September 2022 and February 2023 revealed "a waxing and waning," [R. 24], of fleeting or poor to not

---

[3] The ALJ's decision refers to Dr. Smail as "Dr. Small."  [R. 23–24, 27].  The Court's opinion uses the spelling found in the remainder of the administrative record.

fleeting eye contact, restless to unremarkable motor activity, mumbled to unremarkable speech, nervous or irritated to neutral/euthymic reported mood, racing to unremarkable thought process, and poor to fair insight and judgment.  [R. 593, 636, 653, 669, 675, 681, 687, 705, 712, 718, 724, 740, 835].  From March 2023 through January 2024, however, mental status evaluations by Aljarboua consistently revealed good eye contact, unremarkable speech, neutral/euthymic reported mood, unremarkable thought process, alert attention, and appropriate demeanor, insight, and judgment.  [R. 806, 863, 869, 884, 898, 905, 912, 927, 960, 969, 979, 994, 1006, 1018, 1033, 1040, 1083, 1090, 1097, 1127, 1140, 1160, 1167, 1180, 1200, 1207, 1216, 1223, 1237].  Aljarboua did not formally test memory.  [R. 24]; see also [R. 593, 601, 636, 653, 669, 675, 681, 687, 705, 712, 718, 724, 740, 835, 806, 863, 869, 884, 898, 905, 912, 927, 960, 969, 979, 994, 1006, 1018, 1033, 1040, 1083, 1090, 1097, 1127, 1140, 1160, 1167, 1180, 1200, 1207, 1216, 1223, 1237].

In November 2022, Andrea Quilty, PMHNP, Miron's treating prescriber, described his mood as anxious and his affect as angry, but his attention and perception, speech, thought content, cognition and memory, and judgment as normal, and his behavior as normal and cooperative.  [R. 24, 731–32, 752].[4]  From February 2023 through June 2023, however, she described Miron's affect as "not angry" or as "labile" and "not angry," with all other mental status findings remaining the same as in November 2022.  [R. 24, 663–64, 814, 880, 1026, 1148, 1175].

---

[4] The ALJ's decision refers to Andrea Quilty as "Andrea Quilt" or "Nurse Quilt" [R. 24–25].  The Court's opinion uses the spelling found in the remainder of the administrative record.

Between February 2023 and September 2023, Nicholas Urbanczyk, DO, Miron's primary care provider, consistently described him as alert and oriented to person, place, and time, and described his behavior as normal.  [R. 24, 822, 935, 1053, 1105].

### E.      THE ALJ'S DECISION

On May 20, 2024, the ALJ issued a decision finding that Miron was not disabled under 42 U.S.C. § 1382c(a)(3)(A).  [R. 17–30].  Applying the five-step sequential evaluation process for determining whether an individual is disabled, at step one the ALJ determined that Miron had not engaged in substantial gainful activity since August 27, 2021, the application date.  [R. 19].

At step two, the ALJ determined that Miron had the following "severe impairments": PTSD and major depression disorder.  [R. 19].

At step three, the ALJ determined that Miron did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments.  [R. 20].  As part of the step three analysis, the ALJ determined Miron's degree of functional limitations resulting from his impairments with respect to four functional areas, known as the "Paragraph B" criteria. [R. 20–22].[5]  The ALJ found that Miron had a mild limitation in understanding, remembering, or applying information, [R. 20–21]; a marked limitation in interacting with others, [R. 21]; a

---

[5] The four functional areas are (1) "[u]nderstand, remember, or apply information;" (2) "interact with others;" (3) "concentrate, persist, or maintain pace;" and (4) "adapt or manage oneself."  20 C.F.R. § 416.920a(c)(3).  They are rated using a five-point scale: "[n]one, mild, moderate, marked, and extreme."  Id. § 416.920a(c)(4).  An extreme limitation is one that is "incompatible with the ability to do any gainful activity," id., and exists when a person is "not able to function in [an] area independently, appropriately, effectively, and on a sustained basis," 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A, § 12.00 (2026).  A marked limitation exists when a person's "functioning in [an] area independently, appropriately, effectively, and on a sustained basis is seriously limited."  Id.  To satisfy the paragraph B criteria, a mental disorder must result in extreme limitation of one, or marked limitation of two, paragraph B areas.  Id.

moderate limitation in concentrating, persisting or maintaining pace, [id.], and a moderate limitation in adapting or managing oneself, [R. 21–22].

Before turning to step four, the ALJ assessed Miron's residual functional capacity,[6] concluding that

> [he] has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: [he] is capable of performing simple repetitive work task in a non-assembly line production-paced setting. Work shall involve no public interaction nor team, tandem or collaborative project type work with coworkers. However, [he] is able to work around coworkers with interaction limited to elective superficial conversations. [He] is capable of occasional interaction with supervisors. [He] is able to make simple work-related decisions and able to adapt to simple changes in a routine work setting.

[R. 22].

As relevant here, in making this assessment, the ALJ rejected as "unpersuasive" a March 2023 opinion by Dr. Smail and Aljarboua, which was contained in a mental impairment questionnaire. [R. 27, 848–50]. In it, Dr. Smail and Aljaboua opined that Miron had "extreme" limitations in his ability to (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; and (5) accept instructions and respond appropriately to criticism from supervisors. [R. 27, 848–49].[7] The ALJ reasoned that Miron's diagnosis and treatment for PTSD and major depression disorder and his sobriety did not provide a "sufficient explanation" for these restrictions and that there was insufficient objective evidence in the record to support them. [R.

---

[6] A person's "residual functional capacity" is "the most [they] can still do despite [their] limitations." 20 C.F.R. § 416.945(a)(1) (2026).

[7] The questionnaire defined an "extreme" limitation as "a major limitation," with "no useful ability to function." [R. 848].

27].  He further found the restrictions inconsistent with "the moderate clinical findings, the outpatient level of care, the responsiveness to that care and the activities of the claimant."  [Id.].

The ALJ also rejected as unpersuasive a January 2024 opinion by Dr. Smail and Aljarboua again contained in a mental impairment questionnaire.  [R. 27–28; 1193–95].  In it, Dr. Smail and Aljarboua opined that Miron had "extreme" limitations in his ability to (1) carry out very short and simple instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) work in coordination with or in proximity to others without being distracted by them; (5) complete a normal workweek without interruptions from psychologically based symptoms; (6) perform at a consistent pace with a standard number and length of rest periods; (7) interact appropriately with the general public; (8) ask simple questions or request assistance; (9) accept instructions and respond appropriately to criticism from supervisors; (10) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (11) maintain socially appropriate behavior; (12) respond appropriately to changes in the work setting; and (13) set realistic goals or make plans independently of others; and "marked" limitations in his ability to (1) understand and remember very short and simple instructions; (2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (3) make simple work-related decisions; and (4) be aware of normal hazards and take appropriate precautions; they also opined that he would likely have more than four absences in any average month.  [R. 27–28; 1193–95].[8]  The ALJ similarly found this opinion to be insufficiently explained by Miron's clinical diagnosis, symptoms, or sobriety,

---

[8] The questionnaire defined an "extreme" limitation as "a major limitation," with "no useful ability to function."  [R. 1193].  It defined a "marked" limitation as "a serious limitation," meaning that "[t]he individual cannot generally perform satisfactorily."  [Id.].

unsupported by objective evidence in the record, and inconsistent with Miron's clinical findings, level of care, responsiveness to care, and activities, reasoning that Miron's mental status examinations "reflect[ed] a consistent level of improved function."  [R. 28].

At step four, the ALJ found that Miron had no past relevant work.  [R. 28].

At step five, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Miron could perform, which, based on testimony from a vocational expert, included occupations such as hand packager, dishwasher, price marker, and cleaner.  [R. 29].  Based on this determination, the ALJ found Miron to be not disabled under the Act.  [R. 30].

## II.    STANDARD OF REVIEW

This Court has jurisdiction pursuant to 42 U.S.C. § 1383(c)(3), which provides for judicial review of final decisions of the Commissioner of Social Security on claims for SSI benefits in accordance with 42 U.S.C. § 405(g).  42 U.S.C. § 405(g) permits an individual to obtain judicial review of a final decision of the Commissioner of Social Security by instituting a civil action in federal district court, and gives the Court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing."

This Court's review of the Commissioner's decision is "limited to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000); see also Sacilowski v. Saul, 959 F.3d 431, 437 (1st Cir. 2020) (holding that district courts review "whether the final decision is supported by substantial evidence and whether the correct legal standard was used" (quoting Seavey, 276 F.3d at 9)).  The Court must defer to the Commissioner's factual findings, so long as

such findings are "supported by substantial evidence," but the Court's review of the Commissioner's conclusions of law is de novo.  Seavey, 276 F.3d at 9 (first citing 42 U.S.C. § 405(g); then citing Ward, 211 F.3d at 655; and then citing Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), aff'd, 230 F.3d 1347 (1st Cir. 2000)).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." Biestek v. Berryhill, 587 U.S. 97, 102 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence is "more than a mere scintilla," and "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Consol. Edison, 305 U.S. at 229).  The Court will affirm the ALJ's findings, even if the record could support a different conclusion, when there is substantial evidence to support the ALJ's findings.  See Ortiz v. Sec'y of Health & Hum. Servs., 955 F.2d 765, 770 (1st Cir. 1991).

A denial of benefits, however, will not be upheld if the Commissioner "has committed a legal or factual error in evaluating a particular claim." Manso-Pizarro v. Sec'y of Health & Hum. Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).  In particular, an ALJ's findings are not conclusive "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Sacilowski, 959 F.3d at 437 (quoting Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999)).  "The ALJ cannot reject evidence for no reason, or for the wrong reason, and must explain the basis for his findings." Crosby v. Heckler, 638 F. Supp. 383, 385 (D. Mass. 1985) (citing Cotter v. Harris, 642 F.2d 700, 706–07 (3d Cir. 1981)).  Accordingly, if an "ALJ fail[s] to record consideration of an important piece of evidence that supports [the claimant's] claim and, thereby, le[aves] unresolved conflicts

10

in the evidence, th[e] Court can not conclude that there is substantial evidence in the record to support the Commissioner's decision." Nguyen v. Callahan, 997 F. Supp. 179, 183 (D. Mass. 1998). "Failure to provide an adequate basis for the reviewing court to determine whether the administrative decision is based on substantial evidence requires a remand to the ALJ for further explanation." Crosby, 638 F. Supp. at 385–86 (citing Cotter, 642 F.2d at 706).

## III.   DISCUSSION

Miron advances two challenges to the ALJ's residual functional capacity determination. First, he argues that the ALJ failed properly to evaluate Dr. Smail and Aljarboua's opinions in assessing Miron's residual functional capacity. [ECF No. 9 at 10–14]. Second, he argues that the residual functional capacity determination did not properly account for Miron's marked limitation in interacting with others. [Id. at 14–15].

### A.  Dr. Smail and Aljarboua's Opinions

Miron challenges the ALJ's determination that Dr. Smail and Aljarboua's opinions about Miron's functional limitations were unpersuasive, arguing that the ALJ did not sufficiently refer to Dr. Smail's and Aljarboua's treatment notes or the other medical evidence in rejecting their opinions. [ECF No. 9 at 12–13]; [ECF No. 24 at 3–4]. The Commissioner argues that the ALJ's decision as a whole "provided substantial evidence in the record to support his assessment." [ECF No. 21 at 10].

Applicable regulations require ALJs to articulate how persuasive they find the medical opinions in the case record. 20 C.F.R. § 416.920c(b); see also Purdy v. Berryhill, 887 F.3d 7, 13 n.8 (1st Cir. 2018) (explaining change in regulatory framework applicable to claims filed on or after March 27, 2017). In evaluating persuasiveness, they must consider an opinion's supportability and consistency, the medical source's relationship with the claimant and

11

specialization, as well as other factors that tend to support or contradict the opinion.  20 C.F.R. § 416.920c(a), (c).  The "most important factors" to consider in evaluating an opinion's persuasiveness are "supportability and consistency," id. § 416.920c(a); "these are usually the only factors the ALJ is required to articulate," Mattes v. Dudek, No. 24-cv-10640, 2025 WL 902351, at *7 n.9 (D. Mass. Mar. 25, 2025) (quoting Harrison v. Saul, No. 20-cv-10295, 2021 WL 1153028, at *5 (D. Mass. Mar. 26, 2021)); see also Vazquez v. Kijakazi, No. 20-cv-30176, 2022 WL 952764, at *12 (D. Mass. Mar. 30, 2022) (noting that requiring ALJs "to explain how [they] considered the supportability and consistency factors . . . 'allow[s] . . . a reviewing court to trace the path of [their] reasoning'" (quoting Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017))).  An opinion's supportability depends on how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)."  20 C.F.R. § 416.920c(c)(1).  An opinion's consistency depends on how "consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim."  Id. § 416.920c(c)(2).

Here, the ALJ's rejection of Dr. Smail and Aljarboua's opinions as unpersuasive is supported by substantial evidence.  First, substantial evidence supports the ALJ's determination that Dr. Smail and Aljarboua did not sufficiently support their detailed ratings of Miron's limitations with relevant objective medical evidence or explanation.  [R. 27–28].  The sole basis for the opined restrictions in the 2023 opinion was Miron's clinical diagnosis with PTSD and major depressive disorder.  [R. 850].  The 2024 opinion provided only somewhat more detail, citing both Miron's diagnosis and his "severe" symptoms, including his difficulties concentrating and trusting and relating to others.  [R. 1195].  The ALJ adequately explained why he considered

12

these opinions insufficiently supported, referring specifically to the insufficiency of the clinicians' explanations and the lack of objective evidentiary support, [R. 27–28], and substantial evidence supports his assessment.  Cf. Devine v. Kijakazi, 627 F. Supp. 3d 10, 24 (D. Mass. 2022) (upholding ALJ's decision to discount medical opinion that "listed [the claimant's] symptoms but d[id] not provide any medical bases for them").

Second, substantial evidence supports the ALJ's determination that the opined restrictions were inconsistent with the remaining evidence in the record.  Before addressing the persuasiveness of the medical opinions in Miron's case, the ALJ summarized in detail the evidence pertaining to Miron's medical appointments between September 2022 and January 2024, including Miron's appointments with Dr. Smail and Aljarboua.  [R. 23–24].  As noted supra, that evidence included mental status examinations, according to which, during the relevant time periods, certain of Miron's mental status functions initially "wax[ed] and wan[ed]" before improving considerably.  [R. 24].  After canvassing this evidence, the ALJ concluded that "[l]ongitudinally, the objective record show[ed] an occasional impact of mental health symptoms on function but not to the degree alleged and not consistent with a substantial loss of basic mental function."  [Id.].  The ALJ also discussed Miron's history of outpatient treatment, which "support[ed] a finding that symptoms and limitations of mental health impairments, and substance use, are reasonably managed with an outpatient level of care."  [R. 25].  Finally, the ALJ considered nonmedical evidence, including the fact that Miron had been taking care of his mother, his girlfriend, and his sister at times, watched a friend's pet, and used the bus for transportation, which he found was "consistent with marked limitations interacting with others but not extreme limitations."  [Id.]; see also [R. 98, 724, 740, 912, 1018, 1083, 1090, 1127, 1223].  This analysis and the underlying evidence in the record adequately support the ALJ's

13

conclusion that Dr. Small and Aljarboua's opinions were not consistent with the clinical findings, outpatient level of care, responsiveness to care, and Miron's activities.

Miron's faults the ALJ for failing to make "specific reference" to the clinicians' treatment notes or the other medical evidence when discussing the supportability and consistency of their opinions. [ECF No. 9 at 12–13]; [ECF No. 24 at 3–4]. But the Court reads the ALJ's decision as a whole, see West v. Berryhill, No. 17-1170, 2017 WL 6499834, at *1 (1st Cir. Dec. 11, 2017); Mitchell v. Kijakazi, No. 4:21-cv-40085, 2022 WL 17658117, at *7 (D. Mass. Aug. 19, 2022), and the decision does specifically discuss much of this evidence, [R. 23–26]; in any event, the ALJ was "not required to address every piece of evidence in the record," Mitchell, 2022 WL 17658117, at *7 (quoting Querido v. Barnhart, 344 F. Supp. 2d 236, 245 (D. Mass. 2004)). For the same reason, the Commissioner, by pointing to the ALJ's discussion of the objective medical evidence at step three of the five-step analysis has not engaged in impermissible post hoc rationalization, contrary to what Miron contends, [ECF No. 24 at 4]. See, e.g., Marshall v. Bisignano, No. 24-cv-11431, 2025 WL 2207245, at *5 (D. Mass. Aug. 4, 2025) (holding that ALJ "adequately explained how he considered the supportability of the [clinicians'] opinions" where, "[b]efore addressing the persuasiveness of the medical opinions in [the claimant's] case, the ALJ summarized in detail the evidence pertaining to more than 15 medical appointments that [the claimant] attended during the relevant time period"); Lopez v. Kijakazi, 704 F. Supp. 3d 279, 287 n.6 (D. Mass. 2023) ("By discussing the plaintiff's migraines in some depth at step two, the ALJ is presumed to have considered that impairment to the same extent in determining the claimant's RFC."); Nicole C. v. Saul, No. 19-cv-127, 2020 WL 57727, at *7 (D.R.I. Jan. 6, 2020) (upholding finding of medical opinion as unpersuasive based on "ALJ's decision read as a whole" and noting that "an ALJ is not required to 'neatly package' his

14

analysis in the same paragraph where he also discusses a specific medical opinion and that the Court should examine the entirety of the ALJ's decision to find support for his conclusions" (quoting West v. Colvin, No. 16-cv-081, 2016 WL 6768905, at *7 (D.R.I. Oct. 24, 2016))).  At bottom, while it may have been preferable for the ALJ to explain his analysis of the supportability and consistency factors in greater detail, see Vazquez, 2022 WL 952764, at *13, in this instance, his decision "provide[d] sufficient rationale" to permit judicial review, Charlot v. Bisignano, No. 24-cv-12610, 2025 WL 2453650, at *9 (D. Mass. Aug. 22, 2025) (quoting Martinez v. Kijakazi, No. 20-cv-30151, 2021 WL 5054477, at *9 (D. Mass. Oct. 29, 2021)).

### B.  Social Functioning Limitations

Miron next argues that, although the ALJ, at step three of the five-step analysis, found him to have a marked limitation in interacting with others, he did not adequately account for that limitation in his residual functional capacity determination, according to which Miron was not able to perform "public interaction [or] team, tandem or collaborative project type work with coworkers," but was "able to work around coworkers with interaction limited to elective superficial conversations" and "capable of occasional interaction with supervisors," [R. 22]. [ECF No. 9 at 14–15].  The Commissioner responds that the ALJ properly considered Miron's limitation in interacting with others in determining his residual functional capacity.  [ECF No. 21 at 12–13].

As an initial matter, the Court notes that the basic premise of Miron's argument—that an ALJ must incorporate the Paragraph B assessment into the residual functional capacity determination—appears to be incorrect.  An ALJ's Paragraph B inquiry and findings at step two or three of the five-step framework are distinct from the ALJ's assessment of a claimant's residual functional capacity limitations between step three and step four.  See, e.g., Ortiz v.

15

Dudek, No. 24-cv-11704, 2025 WL 1400356, at *23–24 (D. Mass. May 14, 2025) (describing "the recognized differences between a Paragraph B and RFC assessment"). In fact, an ALJ errs by treating a Paragraph B determination "as a substitute for the required [residual functional capacity] assessment regarding [a claimant's] mental impairments." Id. Thus, it is, at the very least, "debatable whether the [residual functional capacity assessment] must necessarily include the paragraph B criteria . . . that an ALJ determines at step three." Dias v. Colvin, 52 F. Supp. 3d 270, 285 (D. Mass. 2014); see also Wiggin v. Kijakazi, No. 23-cv-30, 2023 WL 4550339, at *4 (D.N.H. July 14, 2023) (rejecting argument that "the ALJ erred in not incorporating his finding for purposes of Paragraph B into the residual functional capacity assessment").

In any event, the ALJ properly accounted for Miron's limitation in social functioning in assessing his residual functional capacity, and substantial evidence supports that aspect of the assessment. In explaining his assessment of Miron's social restrictions, the ALJ stated that he "considered [Miron's] history of anger, violence, alcohol abuse and anxiousness among crowds," but that his "normal thought process, cognition, memory and behavior observed over the longitudinal course of treatment [was] not consistent [with] a substantial loss of the basic mental demands necessary for competitive unskilled work on a regular and continuing basis." [R. 24–25]. As noted supra, the objective medical evidence, which the ALJ discussed in detail, [R. 23–26], supports the ALJ's assessment because it showed that, while Miron's behavior and mental status findings fluctuated over the course of his outpatient treatment, they improved considerably and were either normal or unremarkable starting in March 2023. The ALJ additionally noted Miron's responsiveness to treatment, the fact that a disability examiner had been "able to calm [him] down" during a telephone interview, and his interactions with family, a friend, and a bus driver, [R. 25]; see also [R. 98, 724, 740, 912, 1018, 1083, 1090, 1127, 1223], further evidence

16

in the record that similarly supports the residual functional capacity assessment's social limitations.  See, e.g., Deane v. Colvin, 247 F. Supp. 3d 152, 168 (D. Mass. 2017) (upholding determination that claimant "could have only occasional contact with the public and could have contact with co-workers as long as she did not perform tasks alongside them"); Anderson v. Astrue, 682 F. Supp. 2d 89, 95 (D. Mass. 2010) (upholding residual functional capacity assessment where "ALJ expressly acknowledged that [claimant] had moderate difficulties in social functioning . . . "but concluded nonetheless that, despite those restrictions, he was able to . . . interact appropriately with co-workers").  Thus, the ALJ's assessment is supported by substantial evidence.[9]

## IV.    CONCLUSION

For the reasons stated herein, the Court finds that the ALJ's decision was supported by substantial evidence and therefore **GRANTS** the Commissioner's motion to affirm.

**SO ORDERED.**

June 1, 2026                                        */s/ Allison D. Burroughs*
                                                    ALLISON D. BURROUGHS
                                                    U.S. DISTRICT JUDGE

---

[9] Miron seeks to rely on an opinion by a state agency psychological consultant to argue that social restrictions in the residual functional capacity assessment were insufficiently stringent. [ECF No. 9 at 15].  In that opinion, the consultant opined that Miron had moderate limitations in the area of social functioning and that he was "able to sustain the minimal demands associated with relating adequately with supervisors/co-workers," but "[u]nable to interact with the general public." [R. 102–03].  Miron argues that because the ALJ characterized Miron's limitation in interacting with others as marked, rather than moderate, the residual functional capacity should have incorporated greater limitations than the consultant's opinion.  [ECF No. 9 at 15].  As discussed supra, this argument improperly conflates the Paragraph B analysis with the residual functional capacity assessment.  Moreover, that assessment did, in fact, include "slightly more restrictive limitations with co-workers" based on Miron's "history of anger issues and other evidence detailed in [the ALJ's] decision," and the ALJ explicitly characterized the consultant's opinion as only "partially persuasive." [R. 27].  Nothing in the consultant's opinion, or the ALJ's treatment of it, convinces the Court that the ALJ's assessment was not supported by substantial evidence.